UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNNY RAY WHITE,

    Petitioner,

v.                                                         Case No. 08-13131
                                                        Honorable Marianne O. Battani

C. EICHENLAUB,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S
PETITION FOR WRIT OF HABEAS CORPUS**

**I.    Introduction**

Before the Court is Petitioner Johnny Ray White's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. (Dkt. # 1.) Petitioner is presently confined at the Federal Correctional Institution in Milan, Michigan. He was found guilty, by a jury in the United States District Court for the Eastern District of Wisconsin, of (1) bank robbery by force or violence, 18 U.S.C. §§ 2113(a) and (d) and 2, and, (2) use of a firearm during a crime of violence, 18 U.S.C. §§ 924(c) and 2. In his *pro se* application, Petitioner challenges the authority of the Bureau of Prisons (BOP) to use the Inmate Financial Responsibility Program (IFRP) to collect assessment fees and fines that were imposed against him. For the reasons stated below, the petition for writ of habeas corpus is denied.

**II.    Background**

On April 1, 2005, Petitioner was sentenced to a 148-month term of imprisonment and five years of supervised release for the above-stated convictions. At that time, the federal court also imposed a two-thousand-five-hundred-dollar fine and a two-hundred-dollar special assessment on Petitioner. The judgment stated "[t]he court considers the [Petitioner's] participation in the Federal Bureau of Prisons Inmate Financial Responsibility Program a necessary part of the repayment of the court-imposed financial obligations." (*See* Judgment in a Criminal Case Document, p. 6, attached to Respondent's Response.) The court also ordered that "if this judgment imposes a period of imprisonment[,] payment of criminal[-]monetary penalties shall be during the period of imprisonment." *Id.* While the court specified that Petitioner pay fifty dollars toward the balance of the fine during the period of supervised release, it did not specify any payment schedule during the period of incarceration.

Upon Petitioner's arrival at the federal correctional institution, Petitioner was asked to sign some forms. Petitioner contends that he was not advised that one of the forms that he was signing was a contract under the IFRP, which allowed the BOP to take money from his inmate-trust account to pay fines or restitutions. Petitioner claims that he did not voluntarily agree to participate in the program, contending that he was coerced into doing so.

While incarcerated, Petitioner participated in the IFRP at various times and refused participation at other times; he entered into a total of five IFRP contracts. (*See* Exhibit 3, attached to Respondent's Response.) The first contract was where Petitioner was to pay twenty-five dollars per quarter; no payments were made prior to termination for refusal. The second, third, and fourth contracts were for twenty-five dollars per month; one payment was made prior to termination for refusal on the second contract, no payments were made prior to termination for

refusal on the third contract, and eleven payments were made prior to termination for refusal on the fourth contract. The fifth, and final, contract was for thirty dollars per month; six payments were made prior to termination for refusal. In addition to those payments, Petitioner made three "outside" payments, for a total of one-hundred dollars. The Court also notes that Petitioner completed payment of the two-hundred-dollar assessment but still owes two-thousand-one-hundred-and-twenty dollars on his fine.

On December 12, 2007, Petitioner filed an informal administrative remedy where he accused the BOP of using the program in an illegal manner and subsequently cancelled his IFRP contract. Then, on December 17, 2007, Petitioner filed an administrative remedy request with the Warden, challenging his housing transfer, which resulted from his withdrawal from the IFRP. That request was denied. Petitioner's subsequent appeals to the Regional Office and the Central Office were also denied.

On July 22, 2008, Petitioner filed the instant petition for writ of habeas corpus, arguing that, because the sentencing court did not set a specific schedule for collecting the fine during his incarceration, the BOP is therefore prohibited from setting a payment schedule. He claims that he was not properly informed about the IFRP program before signing the contract. It is Petitioner's position that he intends to pay the fine during his supervised-release term. Petitioner is asking this Court to order the BOP to (1) lift all the "sanctions" imposed for his refusal to participate in the IFRP, (2) restore his pay, (3) return his back pay from the funds withheld, (4) return him to his housing unit, and (5) remove the imposed restrictions on his commissary privileges. Respondent argues that, because the BOP is authorized to collect court-imposed fines through the IFRP and Petitioner has no constitutional right to any of the inmate privileges for

participation in the program, he is not entitled to habeas corpus relief.

**III.    Discussion**

    **A.    Petitioner's IFRP Payment-Schedule Claim**

A petition for writ of habeas corpus filed by a federal inmate under 28 U.S.C. § 2241 is proper where the inmate is challenging the manner in which his or her sentence is being executed. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998); *Perez v. Hemingway*, 157 F.Supp.2d 790, 793 (E.D.Mich. 2001). Petitioner's challenge to the IFRP's payment schedule for the fines that were imposed in his federal-criminal case concerns the execution of his sentence
and is therefore correctly framed as a habeas claim brought pursuant to § 2241. *See Matheny v. Morrison*, 307 F.3d 709, 711-12 (8th Cir. 2002).

The BOP maintains a program to encourage inmates to meet their financial obligations. The IFRP is governed by 28 C.F.R. §§ 545.10-545.11 and the BOP Program Statement.[2] The IFRP has been described as "a work program instituted by the Bureau of Prisons to encourage 'each sentenced inmate to meet his or her legitimate financial obligations.'" *Weinberger v. United States*, 268 F.3d 346, 360 (6th Cir. 2001) ( quoting *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 548 (9th Cir. 1998) (quoting 28 C.F.R. § 545.10)).

Although acknowledging that it had not been presented with the issue, the Sixth Circuit in *Weinberger* noted that other circuit courts have upheld such challenges. *Weinberger*, 268 F.3d at 360. While not addressing any specific challenges to the program, the Sixth Circuit noted that it

---

    [2]That program statement is available on the BOP's website at www.bop.gov/policy.

-4-

had "implicitly endorsed the program." *Id.* (citing *United States v. Webb*, 30 F.3d 687, 690-91 (6th Cir. 1994); *United States v. Hill*, 1999 WL 801543, at 1 (6th Cir. Sept. 28, 1999)).

In *Weinberger*, the petitioner argued that the district court improperly delegated the scheduling of his restitution payments through the BOP's IFRP. Relying on *Whitehead v. United States*, 155 F.2d 460 (6th Cir. 1946), the Sixth Circuit held that a district court may adopt and incorporate into a sentence terms and conditions of the IFRP as established by the BOP and as binding on the prison officials who carry them out. *Weinberger*, 268 F.3d at 361. Additionally, the Sixth Circuit has implicitly upheld the constitutionality of this program in at least one other case. *See United States v. Callan*, 96 Fed.Appx. 299, 301 (6th Cir. 2004) (noting "the complete absence of any constitutional, statutory or decisional authority for the proposition that a federal district court has the subject[-]matter jurisdiction to micro[-]manage the IFRP for the Bureau of Prisons" and further noting that the authority that exists supports the IFRP against general, and due process, challenges).[3]

A petitioner's various constitutional challenges against the IFRP have been routinely rejected; courts have rejected a petitioner's argument that the IFRP amounts to a usurpation of the sentencing court's Article III powers or is a violation of the separation of powers doctrine. *Montana-Figueroa v. Crabtree*, 162 F.3d at 550; *Alevras v. Snyder*, 49 F.Supp.2d 1112, 1114 (E.D.Ark. 1999). Further, as the Sixth Circuit has noted, "due process challenges to the IFRP

---

[3]While it is true that unpublished opinions carry no precedential weight, they often carry "persuasive weight." *United States v. Webber*, 208 F.3d 545, 551, n. 3 (6th Cir. 2000). Moreover, as one court has commented: "the fact that West Group is now digesting and publishing, in its 'Federal Appendix' series, opinions not selected by the Court of Appeals for formal publication, certainly puts a new twist on just what constitutes an 'unpublished' opinion." *See In Re Park*, 275 B.R. 253, 258, n. 9 (Bankr.E.D. Va. 2002).

have uniformly been rejected." *Weinberger*, 268 F.3d at 361, n. 6; *See also Johnpoll v. Thornburgh*, 898 F.2d 849, 851 (2nd Cir. 1990) (stating "the IFRP serves valid penological interests and is fully consistent with the [BOP's] authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation").

Petitioners, like Petitioner in this case, who refuse to participate in the IFRP, do suffer adverse consequences and the benefits denied are not constitutionally guaranteed. For example, a federal prisoner has no cognizable liberty or property interest in any particular prison-job assignment. *James v. Quinlan*, 866 F.2d 627, 629 (3rd Cir. 1989) (inmates do not possess a liberty interest in prison-job assignments). Nor is there a cognizable liberty or property interest in being placed in any particular prison facility. *Dunn v. White*, 880 F.2d 1188, 1198 (10th Cir. 1989) (holding that inducements such as the BOP's threat to alter a prisoner's place of confinement do not infringe on a protected liberty interest).

It is Petitioner's argument that the BOP, through the IFRP's contracts, has exceeded its authority in setting a payment schedule not ordered by the sentencing court. However, other courts have found that where a court imposes a fine but does not set a payment schedule, there has been no improper delegation of authority. *See McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1999) (noting that the IFRP "has been uniformly upheld against constitutional attack"); *United States v. Williams*, 996 F.2d 231, 234 (10th Cir. 1993) (acknowledging the other circuits' holding the IFRP constitutional). As stated above, here, the sentencing court noted that Petitioner's participation in the IFRP was a necessary part of the court-imposed financial obligation on the part of the Petitioner, and that any payment of criminal-monetary penalties imposed would be

due during the period of Petitioner's imprisonment. (*See* Judgment in a Criminal Case Document, p. 6, attached to Respondent's Response.)

Petitioner cites *United States v. Miller*, 77 F.3d 71 (4th Cir. 1996) for the proposition that the payment schedule set by the BOP, through the IFRP, conflicts with the sentencing court's payment schedule, and, that unlawful delegation of judicial power, violates his constitutional rights.

In *Miller*, the Fourth Circuit acknowledged that a district court unlawfully abdicates a "core judicial function," when it allows the BOP to assess the amount of a criminal fine and set the timing of installment payments to satisfy that fine. *Id.* at 78. The *Miller* Court also stated that "responsibility for determining installment payments" rests exclusively with the district court. *Id.* Petitioner asserts that because the BOP is setting the amount and timing of the payment of the fine and/or restitution payments, the sentencing court has therefore abdicated its "core judicial function" in violation of *Miller*.

This Court finds, however, that the holding in *Miller* does not stand for the proposition that a prisoner's participation in the BOP's IFRP program is an abdication of the court's "core judicial function." *Miller*, 77 F.3d at 78. In accordance with 18 U.S.C. § 3572(d)(1), the sentencing court has already determined the amount and timing of the criminal fine Petitioner must pay. The sentencing court has never permitted, nor authorized, the BOP to determine installment payments or set the timing of those payments, nor did the court relinquish to the prison system or the IFRP ultimate authority to establish its own criminal fine. Instead, the sentencing court merely permits Petitioner to pay his criminal fine, through the BOP's financial program. As such, allowing Petitioner to participate in the IFRP is not an abdication of the

sentencing court's "core judicial function;" the IFRP simply allows Petitioner to satisfy payment of his criminal fine through a BOP program.

More recently, the Fourth Circuit decided a case on nearly identical facts. *See Webb v. Hamidullah*, 2006 WL 1946441 (D.S.C. July 11, 2006). In *Webb*, after reviewing a petitioner's allegations that participation in an IFRP program violated *Miller*, the court ruled that such a program only "provides petitioner a means to comply with the court directive and statutory requirement." *Id.* at 1. *Webb* recognized that the IFRP is not a substitute for the "core judicial function" of the sentencing court with regards to establishing a criminal fine; rather, the IFRP program is only a vehicle for ensuring payment is made. Accordingly, the principles of law laid out in *Miller* were not implicated. *Id.* Against that backdrop, therefore, this Court finds that Petitioner's reliance on *Miller* is misplaced.

Therefore, on that basis, Petitioner, in this case, would not be entitled to any due process protections against the threatened loss of any prison job or facility placement for his failure to comply with the provisions of the IFRP. *See also Williams v. Farrior*, 334 F.Supp.2d 898, 904 (E.D. Va. 2004).

### B. Petitioner's IFRP Participation Claim

Petitioner also argues that the characterization of his participation in the IFRP as voluntary is not really voluntary; he argues that because he is subject to adverse consequences for noncompliance, his participation is not voluntary.

The IFRP allows for the development of a financial plan which allows federal inmates to pay enumerated obligations, such as fines or restitution payments, while they are incarcerated. *Id.* (citing 28 C.F.R. § 545.11). The program is voluntary but refusal to participate in the

program carries certain consequences, including the loss of various privileges; the refusal by an inmate to comply with the provisions of his financial plan may result in up to ten possible punishments, including, among other things, not receiving bonus pay or vacation pay, being subjected to a more stringent monthly commissary spending limitation, and being assigned the lowest housing status. 28 C.F.R. § 545.11(d).

Petitioner was convicted of his crime and has been assessed criminal fines and assessments. Whether he participates in an IFRP program, he must still satisfy payment of those fines. The IFRP exists as a means to achieve compliance with the sentencing court's directive. Against that backdrop, the Court finds that Petitioner is not entitled to habeas relief.

## IV. Order

Accordingly,

**IT IS ORDERED** that Petitioner's petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241 is **DENIED**. (Dkt. # 1.) Because a certificate of appealability is not needed to appeal the denial of a habeas petition filed under § 2241, *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004), Petitioner need not apply for one with this Court or with the Sixth Circuit before filing an appeal from the denial of his habeas petition.

s/Marianne O. Battani
Marianne O. Battani
United States District Judge

Date: September 30, 2008

CERTIFICATE OF SERVICE

       I hereby certify that on the above date a copy of this Opinion and Order was served upon Petitioner.

                                      s/Bernadette M. Thebolt

                                      Deputy Clerk